UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDDIE LOUIS SMITH, III,

Plaintiff,

v.

BELINDA D. STEWART, *et al.*,

Defendants.

CASE NO. 3:19-cv-05096 BHS-JRC

REPORT AND
RECOMMENDATION

**NOTED FOR: October 4, 2019**

The District Court has referred this 42 U.S.C. § 1983 civil rights matter to United States Magistrate Judge J. Richard Creatura under 28 U.S.C. §§ 636(b)(1)(A) and (1)(B) and Local Magistrate Judge Rules MJR 1, 3, and 4.  *See* Dkt. 2.

Plaintiff brings various federal and state claims against twenty-five defendants, who are Department of Corrections (DOC) officials, staff, and entities, arising out of alleged incidents during the week of Passover 2018.  Specifically, plaintiff alleges that the Passover meals he signed up to receive based on his "nondenominational religious beliefs" made him severely ill, so that he could not consume any of them.  He claims that under the Passover meal policy, which

1  did not allow participants to opt-out once Passover began, defendants refused to allow plaintiff to

2  change back to a regular diet, so that he was forced to go without food for the week of Passover.

3  Further, he alleges that defendants not only ignored his requests to change his meal plan back but

4  retaliated against him for filing grievances and seeking medical attention by infracting him and

5  demoting his custody level.

6      This matter is now before the Court on a motion to dismiss filed by all named defendants

7  except defendant Joby Taylor. *See* Dkt. 42. The undersigned recommends granting in part and

8  denying in part the motion to dismiss. Specifically, plaintiff has stated colorable claims of

9  violation of the Establishment Clause because prisoners on Ramadan meal plans could withdraw,

10  but not prisoners on Passover meal plans; deliberate indifference because defendants allegedly

11  knowingly disregarded plaintiff's inability to eat the Passover food without getting sick; and

12  retaliation because some defendants allegedly said that plaintiff was being punished for filing

13  grievances. However, the balance of plaintiff's claims should be dismissed without prejudice.

14

15                              **BACKGROUND**

16      Plaintiff, who proceeds *pro se* and *in forma pauperis* (*see* Dkt. 4), initiated this matter in

17  February 2019. *See* Dkts. 1, 5. Plaintiff claims that he missed 24 consecutive meals during

18  Passover, which ran from March 30 to April 7, 2018, because the Passover meals made him sick

19  and defendants refused to provide him with an alternative. *See* Dkt. 5, at 40; Dkt. 5-1, at 4.

20      Plaintiff brings claims against the DOC and five DOC officials: Belinda Stewart, the

21  Corrections Program Administrator; Jamie Dolan, the Food Services Administrator; Robert

22  Herzog, the Assistant Secretary – Prisons Division; Danielle Armbruster, the Assistant Secretary

23  – Re-entry Division; and Michelle Walker, the Prison Disciplinary Program Manager. *See* Dkt.

24

1    5, at 4–5, 11.  He also sues the Stafford Creek Corrections Center ("SCCC"), SCCC

2    superintendent Ronald Haynes, and SCCC associate superintendents Dan Van Ogle and Jeneva

3    Cotton.  *See* Dkt. 5, at 10–11.  He brings claims against 11 corrections staff—a correctional unit

4    supervisor, Stephanie Baltzell; a correctional lieutenant, Charles Casey; two sergeants, Brian

5    Schuetter and Vincent Stroup, and seven corrections officers:  Lewis Villalobos, Joby Taylor,

6    Joshua Sutherby, "Unknown" Montambo, "Unknown" Schneider-Wiss, Steven Wertz, and Bruce

7    Rifenberg.  *See* Dkt. 5, 5–11.  In addition, he brings claims against three medical staff—Nurse

8    Angela Johnson, Nurse Kimberly Malone, and Amanda Kersey, P.A.—and a hearings officer,

9    Thomas L'Heureux.  Dkt. 5, at 11.  He also includes allegations against a number of "John Doe"

10   defendants.  *See* Dkt. 5, at 48–58.

11          The allegations of the complaint, briefly summarized, are as follows.  In December 2017,

12   defendants Stewart and Dolan implemented a Passover meal policy requiring participants to sign

13   up for Passover in advance.  *See* Dkt. 5, at 14; Dkt. 5-1, at 4.  Under the terms of the Passover

14   policy, "Passover participants **will not** be provided any other alternative meals during this

15   period.  Once you sign up for Passover, you will be required to participate for the entire Passover

16   period."  Dkt. 5-1, at 4.  Defendants Stewart and Dolan also promulgated a Ramadan 2018

17   memo, regarding requirements for participating in Ramadan during 2018.  *See* Dkt. 5, at 14; Dkt.

18   5-1, at 7.  Notably, participants could opt-out from the Ramadan meal program if they became ill

19   during the month of Ramadan.  *See* Dkt. 5-1, at 7.

20          Plaintiff alleges that he signed up to observe Passover and was subsequently demoted to

21   MAX custody on January 29, 2018.  Dkt. 5, at 14.  On March 30, he received his first Passover

22   meal and "experienced vomiting, stomach pain, and dizziness" after consuming the meal and

23   continued to have vomiting and gastrointestinal pain throughout the day.  Dkt. 5, at 15 (emphasis

24

REPORT AND RECOMMENDATION - 3

1    removed).  Later in the day, he ate his second Passover meal and experienced more of these

2    symptoms.  *See* Dkt. 5, at 16.  He then requested to be taken off of the Passover diet, including

3    filling out a kite to the chaplain and religious diet request, as directed by corrections staff.  Dkt.

4    5, at 16.

5         While waiting for responses to his kite and request, plaintiff alleges that he continued to

6    be served Passover meals and that defendants refused to provide plaintiff with a regular diet.  *See*

7    Dkt. 5, at 17.  On March 31, plaintiff sent an emergency grievance about his situation, to which

8    defendant Schuetter responded, telling plaintiff to "kite the chaplain."  Dkt. 5, at 18–19; Dkt. 5-2,

9    at 1.  Plaintiff alleges, however, that the chaplain would not have been able to timely respond to

10   a kite since it was the weekend.  *See* Dkt. 5, at 19–20.

11        In what he refers to as a "last resort" attempt to speak to defendant Schuetter, plaintiff

12   covered up his cell window.  *See* Dkt. 5, at 19.  Defendant Schuetter did not take action in

13   response to plaintiff's Passover meal problems.  *See* Dkt. 5, at 20.  Instead, defendant Villalobos

14   infracted plaintiff for covering his window, and defendant Schuetter later demoted plaintiff's

15   custody level.  *See* Dkt. 5-2, at 3, 5.  Plaintiff continued to inform corrections staff—including

16   medical staff—of his alleged inability to consume the Passover meals, to no avail.  *See* Dkt. 5, at

17   22–25.  Later, defendants Villalobos and Schneider-Wiss informed plaintiff that he had been

18   demoted because he had filed the emergency grievance.  *See* Dkt. 5, at 26–27; *see also* Dkt. 5-2,

19   at 5.

20        Plaintiff did not receive a response to his March 30 religious diet request until April 3,

21   when it was returned with a note that he was not "currently on Kosher diet."  Dkt. 5-1, at 13.

22   However, corrections staff refused to acknowledge the note, instead informing plaintiff that

23   defendant Schuetter had instructed them to disregard it because it was forged.  *See* Dkt. 5, at 32.

24

1    On April 5, plaintiff allegedly fell unconscious in his cell due to hunger.  *See* Dkt. 5, at

2    34.  Later that day, plaintiff submitted another emergency grievance stating that he could not eat

3    the Passover diet.  *See* Dkt. 5, at 34; Dkt. 5-2, at 17.  Defendant Stroup then instructed defendant

4    Johnson to infract plaintiff and to continue to do so every time that plaintiff declared a medical

5    emergency.  Dkt. 5, at 36.  Defendant Johnson then infracted plaintiff for "pretend[ing] to be ill,

6    despite a normal nursing assessment" and "beg[inning] a hunger strike and encourag[ing] his cell

7    neighbor to go on hunger strike to protest [Corrections] food in general, and Passover meals

8    specifically[.]"  Dkt. 5, at 36; Dkt. 5-2, at 19.  The same day, the facility chaplain responded to

9    plaintiff's March 30 kite by telling him to "talk to Medical."  *See* Dkt. 5-1, at 11.

10   Plaintiff alleges that he did not receive a regular meal again until April 8, when Passover

11   ended—at which point he had lost over 14 pounds.  *See* Dkt. 5, at 32, 40.   Plaintiff subsequently

12   requested to have his custody level promoted—a request denied by defendant Schuetter.  *See*

13   Dkt. 5, at 42.  As a result of the hunger-strike infraction, plaintiff was sanctioned with the loss of

14   good-conduct time.  *See* Dkt. 5-2, at 38, 40; Dkt. 5-3, at 5

15   Plaintiff brings 14 causes of action based on these factual allegations, citing 42 U.S.C. §§

16   1981, 1983, 1985(3), and 1986; the Religious Land Use and Institutionalized Persons Act

17   ("RLUIPA"), 42 U.S.C. § 2000cc; and state tort law.  He requests declaratory and injunctive

18   relief, damages, and costs.  *See* Dkt. 5, at 57–58.

19   After plaintiff filed his complaint, defendants—other than defendant Taylor—filed a

20   motion to dismiss, including a notice to plaintiff of the dispositive motion.  *See* Dkts. 42, 43.

21   Plaintiff has filed a response, defendants have filed a reply in support of their motion, and the

22   matter is ripe for decision.  *See* Dkts. 52, 53.

23

24

REPORT AND RECOMMENDATION - 5

1                                                **DISCUSSION**

2     **I. Legal Standards for Motion to Dismiss**

3          A complaint must contain "a short and plain statement of the claim showing that the

4 pleader is entitled to relief," "in order to 'give the defendant fair notice of what the . . . claim is

5 and the grounds upon which it rests[.]'" Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550

6 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Although "detailed

7 factual allegations" are not necessary, "[f]actual allegations must be enough to raise a right to

8 relief above the speculative level[.]"  *Id.*  "[A] complaint must contain sufficient factual matter,

9 accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

10 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

11          A court must accept as true all factual allegations—but not legal conclusions—when

12 reviewing whether a complaint survives a motion to dismiss under Rule 12(b)(6).  *See Iqbal*, 556

13 U.S. at 678.  "When there are well-pleaded factual allegations, a court should assume their

14 veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

15 "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

16 sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S.

17 at 556).

18          When a plaintiff is proceeding *pro se*, this Court must "'construe the pleadings liberally

19 and . . . afford the [plaintiff] the benefit of any doubt.'"  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th

20 Cir. 2010) (quoting *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)).  The

21 claims will be dismissed only where it "'appears beyond doubt that the plaintiff can prove no set

22 of facts in support of his claim which would entitle him to relief.'"  *Wilhelm v. Rotman*, 680 F.3d

23 1113, 1121 (9th Cir. 2012) (quoting *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011)).

24

1   Nevertheless, this Court will not supply essential elements of the claim that were not initially

2   pled.  *Pena v. Gardner*, 976 F.2d 469, 471–72 (9th Cir. 1992).

3          This Court may consider materials properly submitted as part of a complaint—such as

4   plaintiff's attachments here—when ruling on the motion to dismiss, without converting the

5   motion to dismiss to a summary judgment motion.  *See Lee v. City of L.A.*, 250 F.3d 668, 688

6   (9th Cir. 2001).

7          **II. Defendants Herzog and Haynes**

8          Plaintiff seeks to bring claims against defendants Assistant Secretary Herzog and

9   Superintendent Haynes.  *See* Dkt. 5, at 48–56.  A supervisory official is liable under § 1983 only

10  "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2)

11  a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

12  violation."  *Rodriquez v. Cty. of L.A.*, 891 F.3d 776, 798 (9th Cir. 2018) (citation omitted).  "'The

13  requisite causal connection can be established . . . by setting in motion a series of acts by others

14  or by knowingly refus[ing] to terminate a series of acts by others, which the [supervisor] knew or

15  reasonably should have known would cause others to inflict a constitutional injury.'"  *Id.* at 798

16  (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

17         Defendants correctly note that the only reference in plaintiff's complaint regarding

18  defendant Haynes' participation is that defendant Van Ogle signed off on a grievance response

19  "in place of" defendant Haynes.  Dkt. 5, at 44; Dkt. 5-2, at 36.  And the reference in the

20  complaint regarding defendant Herzog's involvement appear to be that he promulgated a policy

21  related to lost privileges if a MAX security inmate committed certain acts.  *See* Dkt. 5, at 13;

22  Dkt. 5-1, at 2.  Although promulgating a policy that is so deficient that the policy "'itself is a

23  repudiation of constitutional rights'" and is "'the moving force of the constitutional violation'"

24

1   may give rise to supervisory liability, here plaintiff's complaint includes no allegations that the

2   MAX custody policy somehow deprived him of any constitutional rights.  *See Hansen v. Black*,

3   885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir.

4   1987)).

5       Because these allegations fail to establish any personal participation in—or even any

6   connection to—the alleged deprivations at issue, all claims against defendants Herzog and

7   Haynes should be dismissed from this action.

8   **III.  Defendants DOC and SCCC**

9       Plaintiff also seeks to bring claims against DOC and SCCC, whom he states he names

10  solely as defendants on his claims for injunctive relief under RLUIPA.  *See* Dkt. 52, at 31.

11      The Eleventh Amendment prevents citizens from suing their own state in federal court

12  and—absent a state's consent to suit—applies regardless of the nature of the relief sought and

13  extends to suits against state agencies.  *See Krainski v. Nevada ex. rel Bd. of Regents*, 616 F.3d

14  963, 967 (9th Cir. 2010).  Thus, the Eleventh Amendment bars plaintiff's suit against DOC and

15  SCCC—since they are state agencies being sued in federal court.  *See Mayweathers v. Newland*,

16  314 F.3d 1062, 1069–70 (9th Cir. 2002).

17      Plaintiff argues that because he may bring suit against state *officials* for prospective

18  injunctive relief, he may bring suit against state *agencies*, as well.  *See* Dkt. 52, at 31.  This

19  argument is contrary to established Ninth Circuit law.  *See Mayweathers*, 314 F.3d at 1069.

20  Moreover, plaintiff's argument that the state has effectively waived sovereign immunity under

21  RLUIPA by accepting federal funding is not supported by his cited authority.  *See Sharp v.*

22  *Johnson*, 669 F.3d 144, 155 (3d Cir. 2012) ("the [Supreme] Court held that States did not

23

24

1    consent to waive their sovereign immunity with respect to RLUIPA suits for damages against

2    State employees in their official capacities").

3           Because defendants DOC and SCCC are not subject to suit in federal court—whether for

4    damages under § 1983 or for injunctive relief under RLUIPA—they should be dismissed from

5    this action.

6    **IV.  Injunctive Relief**

7           Plaintiff requests injunctive relief in the form of (1) restoration of "good conduct time"

8    that he lost because of the hunger-strike infraction, (2) expungement of his hunger-strike and

9    window-coverage infractions, and (3) that defendants be enjoined from "establishing and/or

10   applying religious guidelines in a coercive manner." Dkt. 5, at 57–58.  Defendants argue that his

11   claims for injunctive relief are either not cognizable under *Preiser v. Rodriguez*, 411 U.S. 475

12   (1973), that plaintiff lacks standing to bring such claims, and that his request for injunctive relief

13   is impermissibly vague.  Dkt. 42, at 6–7.

14          Under *Preiser*, a challenge to the constitutionality of one's physical confinement that

15   seeks a shortened sentence is not properly brought under § 1983 but must be brought as a

16   petition for habeas corpus.  *See* 411 U.S. at 500.  This includes a request for restoration of good-

17   conduct time.  *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005).  Because invalidation of

18   plaintiff's hunger-strike infraction would necessarily invalidate the loss of his good-conduct time

19   that resulted from that infraction (*see* Dkt. 5-2, at 38, 40; Dkt. 5-3, at 5), plaintiff's claim for

20   restoration of good-conduct time and to have the hunger-strike infraction set aside are not

21   cognizable in this action.

22          Unlike his hunger-strike infraction, plaintiff's window-coverage infraction did not in the

23   loss of good-conduct time—the penalty for the hunger strike infraction was a loss of privileges.

24

1    *See* Dkt. 5-2, at 23, 25, 31.  Thus defendants' argument that *Preiser* bars this Court from setting

2    aside plaintiff's window-coverage infraction is not well-taken.  *See* Dkt. 42, at 6.

3            Defendants also argue that plaintiff lacks standing to challenge the Passover policy

4    because he has not demonstrated a sufficient probability that he will be subjected to the policy

5    again.  *See* Dkt. 42, at 7.  To establish standing, a plaintiff must make "an individualized

6    showing that there is a very significant possibility that the future harm will ensue."  *See Nelsen v.*

7    *King Cty.*, 895 F.2d 1248, 1250 (9th Cir. 1990) (internal citations omitted).  Here, plaintiff has

8    plausibly made such a showing because—all other things remaining the same—each Passover

9    that he is in custody, he may again choose to participate in the Passover diet program based on

10   his "nondenominational religious beliefs," he may again become sick from the Passover meals

11   that he claims made him ill, and he may again not be allowed to receive an alternative diet

12   because of the Passover policy.

13          Defendants' standing argument is simply that there is no "credible threat of repeat harm"

14   because plaintiff is "no longer on the Passover meal plan and need never participate again."  *See*

15   Dkt. 42, at 8.  Of course, based on the allegations in plaintiff's complaint, plaintiff would "never

16   participate again" not because of changed circumstances, but because if plaintiff becomes sick

17   from the Passover meals again, he would have to either consume food that makes him ill for a

18   week or go without food for a week.  As such, plaintiff has standing to bring a claim for

19   injunctive relief against defendants in their official capacities—other than DOC and SCCC.  *See*

20   *Mayweathers v. Newland*, 314 F.3d 1062, 1069–70 (9th Cir. 2002) (holding that suits for

21   prospective injunctive relief against prison officials in their official capacities may be brought

22   under RLUIPA).  Based on the allegations in plaintiff's complaint, he has sufficiently alleged

23   standing for injunctive relief.

24

1      Finally, defendants argue that plaintiff's request for injunctive relief preventing the

2  establishment or application of religious guidelines in a coercive manner is too vague under the

3  PLRA.  *See* Dkt. 42, at 6–7.  In relevant part, the PLRA provides that "[p]rospective relief . . .

4  shall extend no further than necessary to correct the violation of the Federal right of a particular

5  plaintiff or plaintiffs."  18 U.S.C. § 3626(a)(1)(A).  "The court shall not grant or approve any

6  prospective relief unless the court finds that such relief is narrowly drawn, extends no further

7  than necessary to correct the violation of the Federal right, and is the least intrusive means

8  necessary to correct the violation of the Federal right."  *Id.*

9      Defendants are correct that plaintiff's request regarding the Passover policy goes beyond

10  what the PLRA allows.  However, plaintiff's complaint must be construed liberally, in light of

11  his *pro se* status.  Here, plaintiff's requested relief certainly encompasses changing the Passover

12  policy to allow prisoners to "opt out" from the Passover diet during Passover week.  Rather than

13  strike plaintiff's requested injunctive relief, therefore, the Court should interpret plaintiff's claim

14  narrowly, as a request to change the Passover policy to remedy the alleged constitutional

15  violations at issue.

16      Therefore, the District Court should dismiss plaintiff's claims for injunctive relief in the

17  form of setting aside his hunger-strike infraction and restoring his good-conduct time lost as a

18  result of that infraction.  However, the District Court should decline to dismiss plaintiff's claims

19  for injunctive relief in the form of expunging his window-coverage infraction and should

20  interpret his claim regarding religious guidelines as one to have the Passover policy amended so

21  that prisoners may opt-out from the Passover diet during Passover week.  The District Court

22  should also decline to dismiss plaintiff's RLUIPA claims, which are solely for injunctive relief,

23

24

1    on the basis of defendants' argument that the "requested injunctive relief is legally barred and

2    [plaintiff lacks standing]."  *See* Dkt. 42, at 9.

3        Plaintiff's complaint does not make clear which particular defendants plaintiff sues for

4    expungement of his window-coverage infraction or change to the Passover policy.  As noted

5    above, DOC and SCCC are not proper defendants for these claims.  And a claim for prospective

6    injunctive relief against a state official in his or her official capacity must allege facts plausibly

7    demonstrating some connection between the official and the allegedly wrongful conduct.  *See Ex*

8    *Parte Young*, 209 U.S. 123, 157 (1908).  Here, the undersigned broadly construes plaintiff's

9    complaint as asserting claims for injunctive relief against three officials in their official

10   capacities for prospective injunctive relief—defendants Stewart and Dolan, whom plaintiff

11   alleges promulgated the policy (Dkt. 5-1, at 4–5) and defendant associate superintendent Cotton,

12   who allegedly investigated plaintiff's appeal of his infraction "on behalf of the Superintendent"

13   and affirmed the hearing officer's decision.  *See* Dkt. 5-2, at 31.

14       **V.  Damages**

15           **A.  Eighth Amendment Claims**

16       Plaintiff brings claims of violation of the Eighth Amendment for being deprived of food

17   and medical care during Passover.  Dkt. 5, at 49–50.

18       "[T]he treatment a prisoner receives in prison and the conditions under which he is

19   confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S.

20   25, 31 (1983).  "Although the routine discomfort inherent in the prison setting is inadequate to

21   satisfy the . . . Eighth Amendment inquiry, 'those deprivations denying the minimal civilized

22   measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment

23   violation.'"  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quoting *Wilson v. Seiter*, 501

24

1   U.S. 294, 298 (1991) (internal quotation omitted)).  And "'[t]he more basic the need, the shorter

2   the time it can be withheld.'"  *Id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir.

3   1982)).

4        In their motion to dismiss, defendants do not contest that deprivation of "the minimal

5   measures of life's necessities"—such as food—would violate the Eighth Amendment.  Dkt. 42,

6   at 13.  Instead, they argue that because only the bologna meat served with Passover made

7   plaintiff sick, he could have eaten other food served with the Passover meals—so that defendants

8   did not deprive plaintiff of adequate food.  *See* Dkt. 42, at 13.  However, this Court must accept

9   as true the factual allegations of plaintiff's complaint and all reasonable inferences from those

10  factual allegations when reviewing defendants' motion to dismiss.  *See Iqbal*, 556 U.S. at 678;

11  *Cafasso v. General Dynamics C4 Sys.*, 637 F.3d 1047 1054 (9th Cir. 2011).

12       Here, plaintiff's complaint alleges that both of the Passover "meals" that he consumed

13  made him ill and in his various grievances attached to his complaint, he repeatedly refers to the

14  Passover "food" and "meals"—not simply bologna meat—as causing his illness.  *See, e.g.*, Dkt.

15  5, at 15–16; Dkt. 5-1, at 13; Dkt. 5-2, at 1, 11, 17.  Plaintiff further alleges that DOC staff

16  disparaged the quality of the Passover food in front of him.  *See* Dkt. 5, at 15, 45.  Although a

17  kite that plaintiff filled out on the same day that he ate the two meals refers to the "bologna

18  meat" making him sick, plaintiff's allegations in his complaint are that all the Passover food that

19  he consumed—and that was offered during Passover week—made him ill.  *See* Dkt. 5-1, at 11.

20       Plaintiff's claim is that he was not provided with "food that [was] adequate to maintain

21  health"—which is an actionable claim under the Eighth Amendment.  *See LeMaire v. Maass*, 12

22  F.3d 1444, 1456 (9th Cir. 1993).  Defendants' argument that plaintiff was provided food with his

23  Passover meals that did not make him ill is a dispute with plaintiff's factual allegations and not

24

1    an appropriate ground to grant a motion to dismiss.  Similarly, their claim in their reply that

2    plaintiff was offered "the same foods he had been receiving on the 'normal' diet" improperly

3    relies on facts beyond the factual allegations pleaded in plaintiff's complaint or included in the

4    complaint's attachments.  *See* Dkt. 53, at 5.

5        Plaintiff also brings a claim of deliberate indifference for "medical care"—that is,

6    plaintiff claims that it was cruel and unusual punishment for medical staff not to intervene when

7    he informed them that he was being offered only food that made him ill.  *See* Dkt. 5, at 50.

8    "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and

9    wanton infliction of pain'. . . proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429

10   U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

11       In response to this claim, defendants repeat their argument that plaintiff was offered food

12   that he could consume and that "the decision to reject those meals was his own."  Dkt. 42, at 14.

13   This argument, as discussed above, fails to take into account that viewing plaintiff's factual

14   allegations in the light most favorable to him, plaintiff alleges that all the Passover food—not

15   merely one item—made him ill.

16       Defendants also appear to argue that a "prolonged fast[]" "is not inherently dangerous"

17   and so cannot amount to cruel and unusual punishment.  *See* Dkt. 42, at 14.  Defendants suggest

18   that as a matter of law, failure to provide food—other than an approximately 8 ounce meal

19   supplement on one occasion—for eight days would not be actionable under the Eighth

20   Amendment.  The law is clearly to the contrary.  *See, e.g.*, *Toussaint v. McCarthy*, 801 F.2d

21   1080, 1107 (9th Cir. 1986) ("The discrete basic human needs that prison officials must satisfy

22   include food. . . .").

23

24

1    Finally, defendants argue that because medical staff evaluated plaintiff and provided him

2    with a meal supplement on one occasion during Passover week, they were not deliberately

3    indifferent to plaintiff.  However, plaintiff alleges that he repeatedly told medical staff during

4    Passover week that he could not consume that Passover meals and that despite his repeated

5    requests, they told him to "drink water" and infracted him for filing a medical emergency on the

6    day that he passed out.  *See, e.g.*, Dkt. 5, at 22, 25, 28, 34–36, 40.  He alleges that he lost more

7    than 14 pounds, suffered pain and dizziness, and lost consciousness at one point.  *See* Dkt. 5, at

8    28–29, 32, 34; Dkt. 5-2, at 9.  Although the encounter reports from staff evaluations are attached

9    to plaintiff's complaint and include that on one occasion he was provided with approximately 8

10   ounces of a liquid meal supplement (*see* Dkt. 5-2, at 21), taking plaintiff's factual allegations as

11   true, this is inadequate to say that there is no set of facts under which plaintiff could establish

12   that medical staff acted with deliberate indifference.

13   Defendants' motion to dismiss plaintiff's claims of deliberate indifference should

14   therefore be denied.

15   **B.  First Amendment Claims**

16   **1.  Establishment Clause**

17   Plaintiff alleges that defendants "promulgated policies [the Passover and Ramadan

18   policies] establishing religion, and improperly invoked them[,] coercing the plaintiff to

19   participate in religious practice against his protests for a sustained period of time[.]"  Dkt. 5, at

20   51.  In his response to the motion to dismiss, plaintiff also explains that his Establishment Clause

21   claim is for preference given to those observing Ramadan, but not to Passover.  *See* Dkt. 52, at 6

22   ("while the option to opt-out due to illness remains available to those observing Ramadan").

23   Defendants argue that they neither favored one religion over another nor forced plaintiff to

24

1   participate in the Passover program, so that the Establishment Clause is not implicated.  *See* Dkt.

2   42, at 15–16.

3       The First Amendment requires the government to be neutral toward religion—avoiding

4   either hostility or preference to religion.  *See Vasquez v. L.A. Cty.*, 487 F.3d 124, 1255 (9th Cir.

5   2007).  Further, "[t]he clearest command of the Establishment Clause is that one religious

6   denomination cannot be officially preferred over another."  *Larson v. Valente*, 456 U.S. 228, 244

7   (1982).  "[L]aws discriminating *among* religions are subject to strict scrutiny . . . and . . . laws

8   'affording a uniform benefit to *all* religions' should be analyzed under" the test set forth in

9   *Lemon v. Kurtzman*, 403 U.S. 602 (1971).  *Corp. of Presiding Bishop of Church of Jesus Christ*

10  *of Latter-day Saints v. Amos*, 483 U.S. 327, 339 (1987) (quoting *Larson*, 456 U.S. at 246).  The

11  *Lemon* test contains three criteria, all of which a regulation must meet to survive—it must "have

12  a secular . . . purpose," its "principal or primary effect must be one that neither advances nor

13  inhibits religion," and it must not foster excessive government entanglement with religion.

14  *Lemon*, 403 U.S. at 612–13.

15      Defendants argue that plaintiff has failed to allege anything "suggesting the Department

16  favored Jewish inmates over other religious denominations or no religion at all."  Dkt. 42, at 16.

17  To the contrary, plaintiff points to the Ramadan policy, which allows for opting-out from

18  Ramadan once it has begun:  "If you become ill during Ramadan, you may request to be

19  removed from the Ramadan diet."  Dkt. 5-1, at 7.  In contrast, the Passover program does not

20  contain any exception once Passover begins—either for those who become ill or otherwise—and

21  dictates that "Passover participants **will not** be provided any other alternative meals during this

22  time.  Once you sign up for Passover, you will be required to participate for the entire Passover

23  period."  Dt. 5-1, at 4–5.  Thus, the Passover policy appears to disfavor those who participate in

24

1  the Passover program compared to those who participate in the Ramadan program by allowing

2  the latter, but not the former, to discontinue the program if they become ill.

3      Alternatively, even if the policy did not favor one religion over another, it could run afoul

4  of the Establishment Clause by having the primary effect of inhibiting religious practice.

5  Although defendants argue that plaintiff has not shown that he was coerced into practicing a

6  religion since he voluntarily signed up for the Passover program, plaintiff claims that the

7  program's primary effect is to dissuade participation in the Passover program because as

8  implemented by the Department, prisoners who then found themselves unable to consume the

9  Passover food would be forced to go without food for up to a week.  Thus, the program could run

10  afoul of the *Lemon* test by having the "primary effect of . . . inhibiting religion"—by

11  discouraging sign-up for Passover.  *See Am. Family Ass'n, Inc. v. City & Cty. of S.F.*, 277 F.3d

12  1114, 1122 (9th Cir. 2002).

13      Therefore, interpreting plaintiff's pleading liberally and giving plaintiff the benefit of the

14  doubt, plaintiff has stated a claim for violation of the Establishment Clause, and defendants'

15  motion to dismiss this claim should be denied.

16                      **2.  Retaliation**

17      Plaintiff alleges that the two infractions and the level demotion were retaliation for

18  plaintiff's filing grievances and seeking medical attention.  *See* Dkt. 5, at 52.  He brings

19  retaliation claims against defendants Villalobos, Johnson, Stroup, Schuetter, Baltzell, Casey,

20  L'Heureux, Cotton, Van Ogle, Dolan, Armbruster, and Walker.  *See* Dkt. 5, at 52.  Defendants

21  argue that plaintiff's claims are not cognizable in a § 1983 action and that plaintiff has not

22  alleged all the essential elements of a retaliation claim.  *See* Dkt. 42, at 17–18.  These arguments

23  are addressed in turn.

24

### a. *Heck*-barred Claims

Defendants assert that plaintiff's claim for damages for retaliation is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because if this Court agreed with plaintiff, it would be effectively finding that his infractions were imposed unconstitutionally and therefore that his good-conduct time should not have been forfeited. *See* Dkt. 42, at 17.

"[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). "[T]he sole dispositive question is whether a plaintiff's claim, if successful, would imply the invalidity of his conviction." *Whitaker v. Garcetti*, 486 F.3d 572, 584 (9th Cir. 2007). This rule does not apply, however, to "§ 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement." *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003).

Here, although defendants argue that invalidation of plaintiff's disciplinary infractions would necessarily reduce the term of his confinement, this is true for only one of plaintiff's infractions. Plaintiff's hunger-strike infraction resulted in loss of good conduct time. *See* Dkt. 5, at 35–36; Dkt. 5-2, at 19. A decision that calls into question that constitutionality of the hunger-strike infraction would therefore call into question whether the forfeiture of plaintiff's good conduct time was valid. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (a claim that loss of good conduct time credit violated due process was not cognizable under § 1983 because if

1    plaintiff prevailed, it would imply that his sentence should be shortened).  And this would

2    necessarily imply that plaintiff's sentence should be shortened—all in violation of the principles

3    set forth in *Heck v. Humphrey*.  Thus claims of retaliation regarding the hunger-strike infraction

4    should be dismissed without prejudice.  Plaintiff cannot bring these claims unless he also alleges

5    that the loss of good conduct time has been "reversed on direct appeal, expunged by executive

6    order, declared invalid by a state tribunal authorized to make such a determination, or called into

7    question by a federal court's issuance of a writ of habeas corpus."  *Heck*, 512 U.S. at 480–82.

8            However, it appears from plaintiff's complaint and attachments that his window-coverage

9    infraction and level demotion resulted in only loss of privileges, not good conduct time.  *See* Dkt.

10   5, at 21, 27; Dkt. 5-2, at 3, 5.  Therefore, *Heck* does not bar plaintiff's claims related to his

11   window-coverage infraction and subsequent level demotion.  If a jury found in plaintiff's favor

12   on these claims, it would not call into question the validity of plaintiff's underlying conviction or

13   the length of his sentence.

14                      **b.  Elements of Retaliation—Window-Coverage Infraction and**

15                          **Level Demotion**

16           The elements of a claim of retaliation under the First Amendment are—

17               (1) An assertion that a state actor took some adverse action against an inmate
                 (2) because of (3) that prisoner's protected conduct, and that such action (4)
18               chilled the inmate's exercise of his First Amendment rights, and (5) the action
                 did not reasonably advance a legitimate correctional goal.
19

20   *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d

21   559, 567–68 (9th Cir. 2005)).  Here, defendants argue that plaintiff has failed to plead facts

22   plausibly establishing that each defendant had a retaliatory motive and that each defendant's

23   actions were not intended to advance a legitimate correctional goal.

24

1    As for defendants Villalobos and Schuetter, plaintiff alleges that defendant Schuetter said

2    that he would "look into" the Passover meal issue, but later, defendant Villalobos told plaintiff

3    that Schuetter "'doesn't want to talk to you.'" Dkt. 5, at 18. Plaintiff then filed an emergency

4    grievance, and defendant Villalobos told plaintiff, "'Oh, you like to write grievances? Well I got

5    something coming your way.'" Dkt. 5, at 18–19. Plaintiff received defendant Schuetter's

6    response to "kite the chaplain" and then plaintiff claims that he "covered up his cell window as a

7    last resort [to speak] with" defendant Schuetter. *See* Dkt. 5, at 19. According to plaintiff,

8    defendant Schuetter refused to look into the matter further that day—despite plaintiff saying that

9    it would not be until after the weekend that the chaplain could respond to his kite. *See* Dkt. 5, at

10    19–20. Later in the conversation, defendant Schuetter threatened plaintiff with a level demotion.

11    *See* Dkt. 5, at 20. Allegedly, defendant Villalobos issued the window coverage infraction based

12    on this interaction. *See* Dkt. 5, at 21.

13    After the window-coverage infraction, plaintiff alleges that defendant Villalobos and

14    another told plaintiff that "the Sergeant [Schuetter] didn't like that grievance you wrote the other

15    day so he told us to take your radio and he demoted your level." *See* Dkt. 5, at 26–27. Plaintiff

16    further alleges that after he received the response to his kite to the chaplain—a response stating

17    that plaintiff was "not currently on Kosher diet"—defendant Schuetter told staff that the response

18    was forged and to disregard it. *See* Dkt. 5, at 31–32. Later, plaintiff alleges that defendant

19    Schuetter refused to promote his level. Dkt. 5, at 42.

20    These factual allegations against defendants Schuetter and Villalobos, taken as true,

21    plausibly support that defendants Schuetter and Villalobos infracted plaintiff, demoted his

22    custody level, and refused to promote plaintiff's custody level as retaliation for filing a

23    grievance. Contrary to defendants' argument, these allegations go beyond mere questionable

24

1    timing—plaintiff alleges that both defendants actually made statements indicating retaliatory

2    motive.

3         Defendants argue that plaintiff has failed to show the absence of legitimate correctional

4    goals because plaintiff was punished for covering his window—which he freely admitted doing

5    and which violated Department rules. *See* Dkt. 42, at 19. However, retaliation is still actionable

6    even if there could have been a legitimate correctional goal. *See, e.g.*, *Bruce v. Ylst*, 351 F.3d

7    1283, 1289 (9th Cir. 2003) ("But if, in fact, the defendants abused the gang validation procedure

8    as a cover or ruse to silence and punish [plaintiff] because he filed grievances, they cannot assert

9    that [plaintiff's] validation served a valid penological purpose, even though he may have

10   *arguably* ended up where he belonged."); *see also Shepard v. Quillen*, 840 F.3d 686, 694 (9th

11   Cir. 2016) (citing with approval authority that the policy against retaliation applies even where

12   the action taken would otherwise be permissible (internal citations omitted)). Plaintiff's

13   allegation that defendants Villalobos and Schuetter both expressly stated that they were taking

14   adverse actions against him because of his grievance is sufficient to meet his burden to show the

15   absence of a legitimate correctional goal.

16        As noted above, plaintiff's claims related to the hunger-strike infraction are not

17   cognizable under § 1983 because if plaintiff prevailed on these claims, it would affect the length

18   of his sentence. *See supra*, part V(B)(2)(a). The complaint does not allege that defendants

19   Johnson and Stroup participated in the window-coverage infraction or level demotion.

20   Therefore, the retaliation claims against them rely solely on their alleged actions related to the

21   hunger strike infraction, so that these claims against defendants Johnson and Stroup are *Heck*-

22   barred and the Court recommends that these defendants be dismissed.

23

24

1    As for defendants Casey, Van Ogle, Baltzell, L'Heureux, Armbruster, Dolan, Walker,

2    and Cotton, plaintiff raises no particular allegations to plausibly establish that these defendants

3    had retaliatory motive and lacked a legitimate correctional goal.  Regarding defendant Casey,

4    plaintiff incorporates materials showing simply that Casey approved plaintiff's window-coverage

5    infraction and then later responded to one of plaintiff's grievances requesting to be switched

6    back to a regular diet by referring plaintiff to medical staff and "a specific process for religious

7    diets."  *See* Dkt. 5-2, at 3, 17.  This is insufficient to plausibly establish that defendant Casey

8    was retaliating against plaintiff or had no legitimate correctional goal for approving the window-

9    coverage infraction.

10    Regarding defendant Baltzell, her involvement appears to be confined to approving

11    plaintiff's custody demotion based on his window-coverage infraction and file (Dkt. 5-2, at 5),

12    investigating his grievance regarding retaliation, and interviewing plaintiff.  Dkt. 5-2, at 36.

13    However, plaintiff does not plead any particular facts regarding defendant Baltzell's involvement

14    that would support that she acted with a retaliatory motive when she approved the demotion or

15    responded to his grievance or that her responses were not based on a legitimate correctional goal.

16    Regarding defendant L'Heureux's involvement in the window-coverage infraction,

17    L'Heureux was the hearing officer who approved plaintiff's window-coverage infraction based

18    upon his own admission and staff's written testimony.  *See* Dkt. 5-2, at 23, 25, 31.  There are no

19    factual allegations that plausibly establish that he acted with a retaliatory motive or without

20    legitimate correctional goals.

21    As for defendant Van Ogle, the extent of his participation, based on the complaint and

22    attachments, appears to have been approving defendant L'Heureux's finding of guilt (*see* Dkt. 5-

23    2, at 25) and defendant Baltzell's response to plaintiff's grievance.  *See* Dkt. 5-2, at 36.

24

1    Similarly, defendant Cotton merely affirmed defendant L'Heureux's findings of guilt (*see* Dkt.

2    5-2, at 31; Dkt. 5-3, at 5), and defendant Walker responded to plaintiff's letter requesting

3    dismissal of his infractions and stated that she found no due process violations in the disciplinary

4    hearings process.  *See* Dkt. 5-3, at 10.  And defendants Dolan and Armbruster merely reviewed

5    plaintiff's grievance and responses, concurring with previous responses.  *See* Dkt. 5-3, at 8.

6          Plaintiff's claims against defendants Casey, Van Ogle, Baltzell, L'Heureux, Armbruster,

7    Dolan, Walker, and Cotton rest primarily on their role in approving the various infractions,

8    demotions, and grievance responses and the timing between plaintiff's grievances and their

9    actions.  *See* Dkt. 5, at 52.  But plaintiff admitted that he covered his window—leading to his

10   demotion and one of his infractions—and without more, the proximity in time between events

11   does not lead to an inference that any of these defendants were substantially motivated by

12   retaliation or did not have legitimate correctional goals for their actions.  *See Pratt v. Rowland*,

13   65 F.3d 802, 808 (9th Cir. 1995) (requiring more than suspect timing to support an inference of

14   retaliatory motive).

15         Therefore, the retaliation claims against all defendants except defendant Villalobos and

16   defendant Schuetter should be dismissed.

17                          **3.  Free Exercise Clause**

18         Plaintiff alleges that the refusal to provide him with an alternative to the Passover diet

19   when he became ill violated his right to free exercise because it inhibited his religious practice by

20   "morally coercing [plaintiff] to observe . . . Passover" and "depriv[ing] him of any other

21   alternative diet[.]"  Dkt. 5, at 51.  Defendants argue that the factual allegations of the complaint

22   do not set forth that they coerced plaintiff to participate because he freely chose to enroll in the

23

24

1  program and then sought to disenroll based on his belief that the food was making him ill, not

2  religious belief.  *See* Dkt. 42, at 16–17.

3       Prisoners "retain the protections afforded by the First Amendment, 'including its

4  directive that no law shall prohibit the free exercise of religion.'"  *Shakur v. Schriro*, 514 F.3d

5  878, 884 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)

6  (internal citation omitted)).  "However, '[l]awful incarceration brings about the necessary

7  withdrawal or limitation of many privileges and rights, a retraction justified by the considerations

8  underlying our penal system.'"  *Id.* (quoting *O'Lone*, 482 U.S. at 348 (internal quotation

9  omitted)).

10      "A person asserting a free exercise claim must show that the government action in

11  question substantially burdens the person's practice of [his] religion."  *Jones v. Williams*, 791

12  F.3d 1023, 1031 (9th cir. 2015).  Moreover, even a regulation that substantially burdens religious

13  practice may be legitimate if it survives scrutiny under the factors set forth in *Turner v. Safley*.

14  482 U.S. 78 (1987).

15      Here, of course, plaintiff's factual allegations do not amount to being substantially

16  burdened in the practice of his religious beliefs by being coerced to observe Passover because he

17  alleges that he willingly signed up for Passover on the basis of his "non-denominational biblical

18  religious views." Dkt. 5, at 14.  His decision to quit the Passover program was due to illness, not

19  a change in belief.  And failing to provide the Passover diet did not coerce plaintiff into

20  abandoning his religious beliefs because he does not allege that he was forced to consume non-

21  Kosher food during Passover week.  Indeed, the essence of plaintiff's claim is that he was forced

22  to eat nothing for a week—Kosher or otherwise.

23

24

1      Plaintiff alternatively appears to argue that he was substantially burdened in the practice

2  of his religious beliefs by being forced to abandon those beliefs when defendants refused to

3  provide him with the alternative that he requested (a regular diet).  *See* Dkt. 52, at 3–4.  On this

4  point, plaintiff alleges that his case is similar to *Shakur v. Schriro*.  In that case, the Ninth Circuit

5  held that it implicated the Free Exercise Clause to refuse to provide a Kosher diet to a Muslim

6  prisoner who was on a vegetarian diet that made him sick.  *See Shakur*, 514 F.3d at 882.  The

7  Muslim prisoner sought the Kosher diet as a diet consistent with Halal meal requirements that

8  would not make him sick—as the vegetarian diet did.  *Id.*

9      But unlike in *Shakur*, where the prisoner sought to be placed on an alternative diet that

10  still complied with his religious belief (i.e. a Halal diet), here plaintiff's proffered alternative was

11  to simply be placed back on the regular diet that was served to prisoners who were not observing

12  Passover.  Thus unlike in *Shakur*, where the defendants' action could reasonably be seen as

13  forcing the Muslim prisoner to abandon consuming Halal meals, here, there is no allegation that

14  defendants forced plaintiff to abandon his belief that he should consume Kosher meals.  Plaintiff

15  specifically alleges in his complaint that he is seeking relief for not being returned to a regular

16  (i.e. non-Kosher) diet—not that there was a different diet that still complied with his religious

17  beliefs, that he requested the alternative diet, and that it was denied.  He does not allege that

18  providing him with food that he could not eat coerced him into abandoning his beliefs.  His claim

19  is simply that when the Passover diet made him ill, he should have been allowed to return to a

20  regular diet.

21      Plaintiff argues that defendants' refusal to allow him to change diets from a Passover diet

22  to a regular diet when the Passover diet made plaintiff ill essentially created a Hobson's choice

23  for plaintiff:  eat the Passover food that made him severely ill or eat nothing and starve for a

24

week.  Although if true, plaintiff's factual allegations could amount to cruel and unusual

punishment, the choices offered to him did not include forsaking his belief that he had to

consume a Passover diet.  Therefore, he does not show substantial burden of his religious

practice, and his claim is not cognizable under the Free Exercise Clause.

### C.  Equal Protection Clause

Plaintiff alleges that he was discriminated against "as a class of one compared to other

similarly situated individuals without legit[imate] penological basis."  Dkt. 5, at 49.  At the

outset, the Court notes that although plaintiff states that his claim is brought under a class-of-one

theory, he does not allege a claim that he, individually, was treated arbitrarily—as one must in

order to allege a class-of-one claim.

A class of one theory "is unusual because the plaintiff in [such a] case does not allege

that the defendants discriminate against a *group* with whom []he shares characteristics but rather

that the defendants simply harbor animus against h[im] *in particular* and therefore treated h[im]

arbitrarily."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).  But plaintiff does

not appear to allege that any other prisoners were allowed to opt out from the Passover diet if

they became ill, while defendants arbitrarily chose to enforce the rule against plaintiff, only.

Although plaintiff alleged that he was treated differently than "black inmates observing

Ramadan" (Dkt. 52, at 23), plaintiff has not alleged facts sufficient to claim that he was

somehow singled out for discrimination as the only black inmate observing Passover.  *See*

*United States v. Moore*, 543 F.3d 891, 896–97 (7th Cir. 2008) ("To be considered similarly

situated, the [plaintiff] must be *prima facie* identical in all relevant respects or directly

comparable in all material respects" to the others identified (internal quotation omitted)); *see*

*also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

1    Rather, plaintiff alleges that based on his factual allegations, as a prisoner participating in

2    Passover, he was treated differently than all other prisoners participating in Ramadan, who were

3    allowed to opt-out if they became ill.  *See Lazy Y Ranch Ltd.*, 546 F.3d at 592 (holding that

4    where plaintiff relied on difference in treatment based on a classification, rather than unique

5    treatment, the plaintiff was not relying on a class-of-one theory).  Thus plaintiff's claim appears

6    to be more similar to a claim of intentional discrimination on the basis of religion.

7    "The Equal Protection Clause of the Fourteenth Amendment commands that no State

8    shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

9    essentially a direction that all persons similarly situated should be treated alike." *Serrano v.*

10   *Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003) (quoting *City of Cleburne v. Cleburne Living Ctr.*,

11   472 U.S. 432, 439 (1985)).  In order to make out a cognizable claim of discrimination—whether

12   based on religion or otherwise—an essential element of plaintiff's claim is that he plead that

13   defendants acted with a discriminatory purpose, which means more than an awareness of

14   consequences.  It means a course of action chosen because of—not simple in spite of—adverse

15   effects upon an identifiable group.  *See Iqbal*, 556 U.S. at 676–77.  Plaintiff must plead facts

16   showing that defendants "adopted and implemented the . . . policies at issue not for a neutral . . .

17   reason but for the purpose of discrimination on account of . . . religion[.]"  *Id.* at 677.

18   Although plaintiff's complaint must be construed liberally, this Court cannot supply an

19   essential element of his claim—such as intent to discriminate on the basis of religion—for

20   plaintiff.  *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

21   Nor can plaintiff remedy this defect by alleging religious discrimination in response to

22   defendants' motion to dismiss.  *Accord Phillips v. Turmezei*, 1:08-cv-1388-FJM, 2011 WL

23   13192703, at *2 (E.D. Cal. Feb. 24, 2011).

24

1    For lack of allegation of intentional discrimination on the basis of religion, plaintiff's

2    equal protection claim should be dismissed without prejudice but with leave to amend regarding

3    this claim.

4    **D. 42 U.S.C. §§ 1985(3) and 1986**

5    Plaintiff alleges that certain defendants conspired to deprive plaintiff of his civil rights in

6    violation of 42 U.S.C. § 1985(3) and neglected to prevent the conspiracy in violation of 42

7    U.S.C. § 1986. *See* Dkt. 5, at 53–54. Defendants argue that plaintiff has failed to specifically

8    state the existence of an alleged conspiracy, so that both claims fail. *See* Dkt. 42, at 20.

9    10 11 12
> To bring a cause of action successfully under § 1985(3), a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

13    *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *United Brotherhood of*

14    *Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983). The claim must allege facts

15    to support the allegation that defendants conspired together—"[a] mere allegation of conspiracy

16    without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621,

17    626 (9th Cir. 1988).

18    It is well-settled that in a claim brought under § 1985(3), a plaintiff must allege that

19    defendants acted from "some racial, or perhaps otherwise class-based, invidiously discriminatory

20    animus[.]" *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Ninth Circuit has

21    extended § 1985(3) beyond race "only when the class in question can show that there has been a

22    governmental determination that its members require and warrant special federal assistance in

23    protecting their civil rights." *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) (internal

24

1    quotation omitted).  Thus, for example, a claim of conspiracy to retaliate, without more, does not

2    give rise to a cognizable cause of action under § 1985(3) for conspiracy to discriminate.  *Accord*

3    *Saunders v. Cty. of Sacramento*, 2:10-cv-02559-GEB-KJN-PS, 2011 WL 6100295, at *9 (E.D.

4    Cal. Dec. 6, 2011).

5         Here plaintiff's class-based discrimination allegations on the basis of race and/or religion

6    fail for the reasons set forth above.  Further, his claim of retaliation, although viable, cannot form

7    the basis for a § 1985(3) claim since plaintiff is alleging that he was retaliated against on the

8    basis that he complained about his treatment.  With no viable claim for class-based

9    discrimination, plaintiff cannot bring a § 1985(3) claim of conspiracy to discriminate against him

10   on the basis of membership in a protected class.  *See Caldeira v. Cty. of Kauai*, 866 F.2d 1175,

11   1182 (9th Cir. 1989) ("[T]he absence of a section 1983 deprivation of rights precludes a section

12   1985 conspiracy claim predicated on the same allegations.").

13        Moreover, although plaintiff makes out a claim of violation of the Establishment Clause,

14   plaintiff does not allege that there was a conspiracy to discriminate against him because

15   defendants disfavored his religion.  Although in his response to the motion to dismiss, plaintiff

16   points to the level demotion and window-coverage infraction, defendant Schuetter's alleged

17   direction to other staff to disregard plaintiff's Passover diet issues, and the alleged orders to

18   infract plaintiff if he wrote emergency grievances (*see* Dkt. 52, at 26–27), none of these actions

19   appears to be related to the basis for plaintiff's only cognizable First Amendment claim—the

20   apparent preferential treatment given to Ramadan meal program participants.  Rather, the

21   allegations that plaintiff points to are all allegations of retaliation against him for complaining

22   about the alleged cruel and unusual punishment to which he was allegedly subjected when he

23

24

1    was unable to consume the Passover meals and requested to have his diet changed.  *See* Dkt. 52,

2    at 26.

3        Because plaintiff fails to allege facts to support the existence of a conspiracy under §

4    1985(3), his claim under § 1986 fails, as well.  *See Trerice v. Pedersen*, 769 F.2d 1398, 1403

5    (9th Cir. 1985).  Plaintiff's claims under §§ 1985 and 1986 should be dismissed with leave to

6    amend.

7                    **E.  42 U.S.C § 1981**

8        Plaintiff alleges that defendants violated 42 U.S.C. § 1981, prohibiting racial

9    discrimination in the making and termination of contracts, when they allegedly kept plaintiff

10   from terminating his "contract" to receive a Passover diet.  *See* Dkt. 5, at 55.  Defendants request

11   that this claim be dismissed for reasons including any plausible factual allegations of racial

12   discrimination.  *See* Dkt. 42, at 21; Dkt. 53, at 9.

13       An essential element of a claim under § 1981 is that defendants acted with the intent to

14   discriminate on the basis of race.  *See Gen'l Building Contractors Assoc. v. Pennsylvania*, 458

15   U.S. 375, 391 (1982).  Here, other than identifying himself as a "black citizen" (Dkt. 5, at 54),

16   plaintiff does not claim that defendants were motivated by race when they refused to allow him

17   to return to the regular meal program.  He provides no plausible factual allegations to support

18   that defendants' decision was motivated by racial animus.  As such, his claim should be

19   dismissed.

20   ///

21   ///

22   ///

23   ///

24

### F.  Substantive Due Process

Plaintiff brings a claim for violation of substantive due process against defendants for "morally coerc[ing] the plaintiff to adhere to the terms of an agreement that was unconstitutional" and "sanction[ing] the plaintiff to a loss of good time[.]"  *See* Dkt. 5, at 48.  Defendants argue that this claim is appropriately considered under the Eighth Amendment.  *See* Dkt. 42, at 10.

"[I]f a constitutional claim is covered by a specific constitutional provision, such as . . . the Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  *See United State v. Lanier*, 520 U.S. 259, 272 n.7 (1997).  As plaintiff's substantive due process claim is co-extensive with his claim that prison officials were deliberately indifferent to his medical needs and failed to provide him with adequate nutrition (*see* Dkt. 52, at 20–21), it is evaluated under the Eighth Amendment.  Plaintiff's freestanding claim for violation of substantive due process should be dismissed.

### VI.  Motion to Strike

Defendants request that the Court strike plaintiff's excess pages in his response to their motion to dismiss.  *See* Dkt. 53, at 1.  Although plaintiff's responsive brief is overlength, the Court declines to strike any portion of it.  Plaintiff should be aware, however, that *pro se* status does not excuse compliance with this Court's local rules.  In the future, if plaintiff desires to file an over-length response or other document, he must comply with Local Civil Rule 7(f).

///

///

///

1

**CONCLUSION**

2        Defendants' motion to dismiss should be granted in part and denied in part.  Specifically,

3    the following claims should be dismissed without prejudice—(1) all claims against defendants

4    Herzog, Haynes, DOC, and SCCC, (2) plaintiff's requests for any injunctive relief other than

5    expungement of his infraction for covering his window and his level demotion for the same

6    behavior and his request to change the Passover policy to allow for opting-out during Passover

7    week; (3) all retaliation claims except those against defendants Villalobos and Schuetter; (4) the

8    Free Exercise claims; (5) the Equal Protection claims; (6) the claims under 42 U.S.C. §§ 1981,

9    1985, and 1986; and (7) the substantive due process claims.  All of the dismissals should be

10   without prejudice, and the dismissals of the Equal Protection, § 1985, and § 1986 claims should

11   be with leave to amend.  None of the claims against defendant Taylor should be dismissed,

12   however, since he did not join in the motion to dismiss.

13       In sum, related to the defendants who brought the motion to dismiss, the following claims

14   survive—(1) Claims for injunctive relief against defendants Dolan and Stewart to have the

15   Passover policy changed to allow opting out during Passover week; (2) Claims for injunctive

16   relief against defendant Cotton to have plaintiff's disciplinary infraction for covering his window

17   expunged; (3) Claims against all moving defendants except defendants Herzog, Haynes, DOC,

18   and SCCC for damages on the basis of violation of the Eighth Amendment and the

19   Establishment Clause; (4) Claims against defendants Villalobos and Schuetter for damages for

20   retaliation in violation of the First Amendment; (5) Plaintiff's state-law claims, which the

21   moving defendants do not address in their motion to dismiss.

22       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

23   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

24

6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on October 4, 2019 as noted in the caption.

Dated this 16th day of September, 2019.

J. Richard Creatura
United States Magistrate Judge