UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDDIE LOUIS SMITH, III,

  Plaintiff,

v.

BELINDA D. STEWART, *et al.*,

  Defendants.

CASE NO. 3:19-cv-05096 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: **December 20, 2019**

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and local Magistrate Judge Rules MJR1, MJR3, and MJR4.

Plaintiff, who alleges that defendants refused to allow him to opt-out from the Passover meal program when the Passover food made plaintiff ill, requests a temporary restraining order ("TRO") and preliminary injunction "directing the Defendants to change or amend the Passover policy so that prisoners may opt-out from the Passover diet during Passover week in order to remedy the alleged constitutional violations at issue." Dkt. 66, at 1. Because plaintiff has not

1  met his burden to show a likelihood of success on the merits or that he is faced with an
2  immediate threat of irreparable harm, his request should be denied.

## BACKGROUND

Plaintiff alleges that he missed 24 consecutive meals during Passover, which ran from March 30 to April 7, 2018, because the Passover meals made him sick and defendants refused to provide him with an alternative. *See* Dkt. 5, at 40; Dkt. 5-1, at 4.  His complaint raises a variety of claims, including that the failure to allow him to opt-out during Passover week and alleged retaliation in response to his complaints violated the First and Eighth Amendments. *See* Dkt. 5.

Defendants filed a motion to dismiss, which the Court granted in part. *See* Dkt. 57.  The claims that survived the motion to dismiss included claims for injunctive relief against certain defendants to have the Passover policy changed to allow opting out during Passover week, against one defendant to have a disciplinary infraction expunged, and against certain defendants for damages for violating the First and Eighth Amendments and state law. *See* Dkt. 54, at 32. The Court also granted plaintiff leave to amend his dismissed Equal Protection, § 1985, and § 1986 claims. *See* Dkt. 54, at 32.

Plaintiff now moves for a TRO and preliminary injunction. *See* Dkt. 66.  He requests that the Court "direct[] the Defendants to change or amend the Passover policy so that prisoners may opt-out from the Passover diet during Passover week in order to remedy the alleged constitutional violations at issue." Dkt. 66, at 1.  Defendants have filed a response, and the matter is ripe for decision. *See* Dkts. 66, 69.

|   |   |
|---|---|
| 1 | **DISCUSSION** |
| 2 | **I. Legal Principles** |

The Court applies substantially identical standards when determining whether to issue a TRO or a preliminary injunction. *See Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). This relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winters v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (Injunctions are to be used sparingly, and only in a clear and plain case.).

The party seeking such relief must establish more than a mere possibility of harm—"it must be likely that there will be" harm. *Am. Trucking Assocs., Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). The party must show (1) "'that he is likely to succeed on the merits,'" (2) "'that he is likely to suffer irreparable harm in the absence of preliminary relief,'" (3) "'that the balance of equities tips in his favor,'" and (4) "'that an injunction is in the public interest.'" *Id.* (quoting *Winters*, 555 U.S. at 20). Regarding factor (2), harm must be "immediate"—that is, it must be likely that it will occur before a decision on the merits can be rendered. *See Boardman v. Pacific Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016).

Alternatively, a TRO or preliminary injunction is appropriate if "'serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor,'" which allows the status quo to be preserved when complex legal questions require further inspection or deliberation. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). Nonetheless, plaintiff must still show that irreparable injury is likely and that the injunction is in the public interest. *Id.*

**II. Likelihood of Success on the Merits**

Plaintiff asserts that he is likely to succeed on the merits because defendants imposed a substantial burden on his religious practice, coerced him to observe a religious practice, and were deliberately indifferent to his health. *See* Dkt. 66-1, at 5. In response, defendants provide the Passover menu and explain that plaintiff was offered a variety of foods that he was able to consume without becoming ill. *See* Dkt. 69, at 4.

As the Court has previously noted, plaintiff's complaint sufficiently alleged claims under the First and Eighth Amendments to survive defendants' motion to dismiss. *See* Dkt. 54, at 13–17. However, these bare allegations are not determinative of the likelihood of success on the merits when plaintiff requests a preliminary injunction. Rather, the Ninth Circuit and this District have looked to the evidence in the record to determine whether a plaintiff establishes a likelihood of success on the merits. *See, e.g.*, *Knauer v. Kaiser Permanente Int'l, Inc.*, 94 F. App'x 470, 471 (9th Cir. 2004) (ruling that it was an abuse of discretion to find that this factor was in plaintiff's favor where the "evidence in the record" was otherwise); *Brewster v. Seaside Trustee of Wash., Inc.*, Case No. C16-5732 BHS, 2017 WL 518254, at *2 (W.D. Wash. Feb. 8, 2017) ("[There is no evidence of competing claims for payments, which would add substance to the . . . claims[.]").

Here, the evidence in the record does not establish a likelihood of success on the merits. The crux of plaintiff's allegations is that *all* the Passover food made him ill, so that the choice presented to him by prison officials was to consume food that made him ill or to starve during Passover. *See, e.g.*, Dkt. 5, at 15–16; Dkt. 5-1, at 13; Dkt. 5-2, at 1, 11, 17. However, these claims are—at this point in the litigation—substantiated by no more than plaintiff's own statements that the "Passover food" made him ill. Indeed, the Court notes that plaintiff himself

has, at one point, specifically identified the "bologna meat" in his Passover meals as causing his illness. *See* Dkt. 5-1, at 11.

Defendants have provided the Passover menu from 2018, identifying lunch meat (bologna or salami) as being one of many discrete food items provided during Passover. *See* Dkt. 70-1, at 2. Of note, most meals—including nearly all dinners and all breakfasts—contained no lunch meat. *See* Dkt. 70-1, at 2. Defendants point out that the evidence of record supports that plaintiff could have consumed nearly all of the Passover meal items except the lunch meat served on March 30 that he claims made him ill. *See* Dkt. 69, at 4. Plaintiff has provided no evidence to the contrary, other than his allegations that he could not eat "the Passover food."

Further, the Passover menu shows that plaintiff was offered many discrete food items— for instance milk cartons, matzoh crackers, cream cheese, jelly, hard-boiled eggs, and beef goulash—that were not offered at all on the day that plaintiff alleges he became ill from eating Passover food. *See* Dkt. 70-1, at 2. Again, plaintiff does not explain why he refused to consume other foods that were not part of the meals that he alleges made him ill, other than his unexplained assertion that "all" the Passover food would have made him ill.

Thus the evidence in the record undermines plaintiff's claim that he was forced to either eat contaminated food or starve during Passover, which, as noted above, is the basis for the claims in his complaint. Plaintiff's reiteration of the allegations in his complaint is not adequate for the Court to find a likelihood of success on the merits, in these circumstances.

**III. Irreparable Harm**

Plaintiff asserts that he has shown the immediate threat of irreparable harm because as long as he remains incarcerated, he will be subject to the same policy if he wishes to observe

Passover. *See* Dkt. 66-1, at 3. Defendants respond that Passover is not until April 2020, so that a preliminary injunction is premature at this point. *See* Dkt. 69, at 5.

Defendants' argument is well-taken. Even if the Passover Policy remains unchanged, plaintiff has not shown that an immediate threat of harm is posed—that is, that he could not obtain the requested relief through litigation on the merits. As Passover will not occur for several months, his motion is, at present, premature. Plaintiff's speculation that "[t]he deadline for the plaintiff to sign up for Passover will likely be sometime [December]" is not enough to meet his burden on this point. *See* Dkt. 66-1, at 4.

Separately, the Court notes that as explained above, the balance of the evidence of record is that plaintiff would not be forced to starve during Passover if all things remain the same, as he would appear to be able to consume the foods that did not make him ill.

For either of these two reasons, plaintiff fails to meet his burden to show an immediate threat of irreparable harm.

**IV. Balance of the Equities**

Plaintiff asserts that the balance of equities is in his favor because the deadline for Passover program sign-up will be next month, because Defendants will suffer no hardship in amending the policy, and because forcing him to consume food that will make him ill serves no compelling governmental interest. *See* Dkt. 66-1, at 5. Defendants assert that they should not be forced to redo their preliminary planning "months before any potential harm could occur." Dkt. 69, at 6.

When a plaintiff seeks to enjoin the activity of a government agency, even within the unitary court system, his case must contend with "the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs."

*Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (citations omitted). This holding applies even more strongly in cases involving the administration of state prisons. *Turner v. Safley*, 482 U.S. 78, 85 (1987). "Running a prison is an inordinately difficult undertaking . . . peculiarly within the province of the legislative and executive branches of government. . . . [S]eparation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in *Martinez*, additional reason to accord deference to appropriate prison authorities." *Id*. (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *rev'd in part on other grounds in Thornburgh v. Abbott,* 490 U.S. 401 (1989)).

As noted above, plaintiff's speculation about the Passover sign-up deadline being sometime in December is inadequate to meet his burden. However, defendants have offered no concrete evidence in support of their argument that it would cause hardship for them to change to policy. *See* Dkt. 70. As such, the Court finds that the balance of equities tips in neither plaintiff's nor defendants' favor.

**V. Public Interest**

Plaintiff argues that the public has an interest in "prison officials [obeying] the law[.]" Dkt. 66-1, at 7. Defendants argue that the public has an interest in maintaining unnecessary federal interference in state prison administration. *See* Dkt. 69, at 6.

"The public interest analysis for the issuance of a preliminary injunction requires [this Court] to consider 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *California Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1115 (9th Cir. 2010) (internal citation omitted). Here, the parties have each identified critical public interests, so that this factor does not weigh in either party's favor.

**VI. Conclusion**

1    Having considered the four factors argued by plaintiff as requiring the entry of a TRO
2 and preliminary injunction in this matter, the undersigned finds that plaintiff has failed to show
3 that there is a likelihood of success on the merits and that he is faced with the immediate threat
4 of irreparable harm.  The remaining factors are neutral.  Therefore, the undersigned recommends
5 that the Court deny plaintiff's request for a TRO and preliminary injunction.  Because
6 consideration of these factors is dispositive, the undersigned does not address defendants'
7 argument that plaintiff's requested relief is too broadly drawn under the Prison Litigation Reform
8 Act.  *See* Dkt. 69, at 7.

## CONCLUSION

The undersigned recommends that plaintiff's motion for a TRO and preliminary injunction (Dkt. 66) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge (*see* 28 U.S.C. § 636(b)(1)(C)) and can result in a result in a waiver of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 20, 2019**, as noted in the caption.

Dated this 3rd day of December, 2019.

J. Richard Creatura
United States Magistrate Judge